49 CCPA
S. C. JOHNSON & SON, INC., Appellant,.

v.

GASTON JOHNSTON CORPORATION,. Appellee.

Patent Appeal No. 6779.

United States Court of Customs and Patent Appeals.
July 25, 1962.

Francis C. Browne, William E. Schuyler, Jr., Andrew B. Beveridge, Washington, D. C. (Mead, Browne, Schuyler & Beveridge, Washington, D. C., of counsel), and Roger D. Mulhollen, Racine, Wis., for appellant.

Richard W. Blum, New York City (Blum, Moscovitz, Friedman & Blum, New York City, of counsel), for appellee.

Before WORLEY, Chief Judge, and RICH, MARTIN, and SMITH, Associate Judges.

WORLEY, Chief Judge.

The Gaston Johnston Corporation seeks registration of the mark "JOHNSTON'S NO ROACH" under the provisions of Section 2(f) of the Lanham Act, 15 U.S.C.A. § 1052(f).[1] S. C. Johnson & Son, Inc., opposes on prior registration of the mark "JOHNSON'S ANT KILLER" coupled with the facsimile signature "M. H. JOHNSON" and a pictorial representation of insects, for use on an insecticide,[2] and of certain other trademarks comprising "JOHNSON'S" as the mark, or as the essential feature thereof, for waxes, polishes and cleaners.[3]

To avoid confusion between Johnston and Johnson, the parties will be referred to as applicant and opposer, respectively.

So far as opposer's registrations of its marks for waxes, polishes and cleaners are concerned, the board found no likelihood of confusion and opposer does not appear to question that finding here. We therefore will limit our consideration to the "ANT KILLER" registration.

Applicant's mark is for use on "insecticides, namely, brush-on compositions for killing roaches, ants, water bugs and silver fish." Opposer's "ANT KILLER" mark, as noted above, is also for an insecticide.

As we understand the record, two questions are presented: Does applicant's mark so resemble opposer's "ANT KILLER" mark as to be likely to result in confusion, mistake or deception of purchasers within the meaning of Section 2(d) of the Lanham Act; if so, who is the prior user? In considering the first question, the board stated:

"Opposer argues that confusion is likely because "JOHNSON'S" and "JOHNSTON'S" are substantially similar names. This contention, however, completely disregards the fact that applicant's mark includes the notation "NO ROACH", which, as evidenced by the illustration above, completely dominates applicant's mark. In view thereof and since "JOHNSTON'S", as used in applicant's mark, possesses the significance of a trade name, it is reasonable to assume that purchasers would more than likely rely on the suggestive notation "NO ROACH" to identify applicant's goods as to source."

We are unable to agree with that reasoning or conclusion. There can be no doubt that Johnston and Johnson are alike, indeed so alike that, on the facts here, we think the average purchaser could hardly be expected to distinguish the two.

1. "Sec. 2. Trademarks registrable on the principal register

\* \* \* \* \* \*

"(f) except as expressly excluded in paragraphs (a), (b), (c), and (d) of this section, nothing herein shall prevent the registration of a mark used by the applicant which has become distinctive of the applicant's goods in commerce. The Commissioner may accept as prima facie evidence that the mark has become distinctive, as applied to the applicant's goods in commerce, proof of substantially exclusive and continuous use thereof as a mark by the applicant in commerce for the five years next preceding the date of the filing of the application for its registration \* \* \*."

2. Reg. No. 532,019, issued October 17, 1950, to a predecessor, on an application filed May 11, 1948.

3. Reg. No. 106,108, issued October 12, 1915, to a predecessor and twice renewed to opposer;
Reg. No. 300,874, issued February 14, 1933, to a predecessor, published under Sec. 12(c) by opposer on April 24, 1948, and renewed;
Reg. No. 310,728, issued March 6, 1934, published under Sec. 12(c) by opposer on April 27, 1948, and renewed;
Reg. No. 305,536, issued August 22, 1933, published under Sec. 12(c) by opposer on April 27, 1948, and renewed;
Reg. No. 560,338, issued June 24, 1952.

While we agree with the board that in applicant's specimen, "NO ROACH" dominates the mark, we are not satisfied that it dominates so completely as to eliminate Johnston as an indication of source or origin. If applicant's mark consisted only of "NO ROACH" purchasers would have no alternative, despite the suggestive and descriptive nature of the term, to so identify the goods. However, when "JOHNSTON'S" is added, we think the average purchaser would consider "JOHNSTON'S" as the source of the article. Why else would "JOHNSTON'S" be added?

While we appreciate the obvious differences between the terms "ANT KILLER" and "NO ROACH," we are also aware that both products are insecticides; they both kill ants and roaches; they appear to be relatively inexpensive products; they are sold through the same over-the-counter channels of trade; and the marks include virtually identical surnames. Under such circumstances we think there would be a likelihood of that confusion contemplated by the provisions of Section 2(d) of the Lanham Act.

Turning to the question of priority, we are unable to agree with the board that applicant has satisfactorily shown use of its mark prior to May 11, 1948, the application date for registration of opposer's "ANT KILLER" mark.

The only testimony is that of Gaston Johnston, president of the Johnston Corporation, accompanied by certain documentary evidence.

We do not think the evidence of record can fairly be held to discharge Johnston's burden of proof. Nowhere does the witness expressly state that he, his company, or his corporation had used "JOHNSTON'S NO ROACH" prior to the May 11, 1948, filing date of the "ANT KILLER" application. Applicant's sales records do not begin before 1949; the earliest copyright date on an exhibit label is 1950; and the earliest evidence of advertising is 1951. We are unable to agree with applicant that the 1949 sales of $80,900 necessarily means that such sales could not have been made without activity prior to 1948.

For the above reasons we must *reverse* the decision appealed from.

Reversed.

SMITH, Judge (concurring).

It is my opinion applicant has not established use of its mark as alleged in its application. I would therefore reverse solely on this ground.